[16 NYS3d 229]

STEVEN LADUZINSKI, Appellant, v ALVAREZ & MARSAL TAXAND
LLC et al., Respondents.

First Department, August 25, 2015

APPEARANCES OF COUNSEL

*Law Office of Michael H. Joseph, PLLC*, White Plains (*Michael H. Joseph* of counsel), for appellant.

*Epstein Becker & Green, P.C.*, New York City (*J. William Cook* and *Robert D. Goldstein* of counsel), for respondents.

**OPINION OF THE COURT**

Acosta, J.

This appeal raises several issues, namely whether plaintiff

has stated a cause of action for fraudulent inducement, notwithstanding his at-will employment status, where he claims an injury resulting from his reliance on his employer's misrepresentations regarding the nature of his work, and whether the alleged misrepresentations are actionable statements of present fact or nonactionable future promises. We find that plaintiff had pleaded an injury separate and distinct from his termination, that is, that the representations on which he allegedly relied concerned the nature and not the duration or security of his employment, and therefore that his status as an at-will employee does not preclude his cause of action for fraudulent inducement. We also find that defendant's alleged misrepresentations are actionable statements of present fact. Thus, plaintiff's cause of action survives defendants' motion to dismiss.

In February 2012, plaintiff voluntarily quit his employment with J.P. Morgan, where he earned an annual salary of $150,000 plus an end-of-the-year bonus of $20,000 as a vice-president and senior tax-manager, to work for defendants Alvarez & Marsal Taxand LLC, and Alvarez & Marsal Holdings LLC (collectively, the Alvarez companies) in the capacity of senior director. Before starting his employment with J.P. Morgan in March 2011, plaintiff had sent his resume to the Alvarez companies in search of a position. In September 2011, defendant Ernesto Perez, the managing director and head of the Alvarez companies, contacted plaintiff to discuss the possibility of employment. At their subsequent meeting, Perez told plaintiff that the Alvarez companies had "a lot of clients and were busy." After plaintiff said that he had personal and professional contacts in Miami, Florida, Perez expressed an interest in doing business with plaintiff's contacts. In a follow-up interview on October 24, 2011, Perez offered plaintiff a position with the Alvarez companies, reiterating the companies' interest in tapping into plaintiff's contact pool for prospective clients.

Before accepting the position, plaintiff attempted to bargain for a two-year contract "because he needed to expend a significant investment of time and energy to utilize his business and personal contacts to market the firm's services." However, after Perez told plaintiff that the position they were offering him as senior director did not focus on procuring clients and that plaintiff's role would not be devoted to business development but rather management of the Alvarez companies' sizable workload, plaintiff accepted defendants' offer of at-will employ-

ment as senior director for an annual salary of $160,000, and quit his job at J.P. Morgan.

Plaintiff began working for defendants on March 1, 2012, and was immediately asked to compile a list of his contacts for Perez. He soon realized that defendants were not busy and that they did not want him to manage their existing workload. Plaintiff alleges that defendants only wanted his contacts and that they tried to "commandeer" the relationships he had developed and to prevent him from performing the work he had generated. Indeed, during his performance evaluation on November 7, 2012, plaintiff was told by Perez that he was doing a good job bringing in opportunities but that he "needed to hand over the relationships for others in the firm to exploit." Eight days later, on November 15, 2012, after plaintiff surrendered all of his contacts to defendants, he was terminated because, defendants said, there was no work for him. In evaluating a motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within a cognizable legal theory (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

> "In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]).

Plaintiff alleges that Perez knowingly and purposely misrepresented the nature of the work plaintiff would be doing for defendants by telling him that he would be managing the sizeable workload of the company rather than bringing in business, when in fact defendants intended the opposite, that Perez made these representations to induce him to leave his employment and go to work for defendants, and that, in reliance on Perez's misrepresentations, he left his stable and well compensated employment with J.P. Morgan, which brought about a setback in his career. All the elements of a claim for fraudulent inducement are alleged. The motion court erred in finding that plaintiff's at-will employment status precluded an action for fraudulent inducement.

An at-will employee, who has been terminated, cannot state a fraudulent inducement claim on the basis of having relied upon the employer's promise not to terminate the contract (*Smalley v Dreyfus Corp.*, 10 NY3d 55, 59 [2008]), or upon any representations of future intentions as to the duration or security of his employment (*see Meyercord v Curry*, 38 AD3d 315 [1st Dept 2007]; *Hobler v Hussain*, 111 AD3d 1006 [3d Dept 2013]). However, where an at-will employee alleges an injury *"separate* and *distinct* from termination of [his] employment,"* he may have a cause of action for fraudulent inducement (*Smalley*, 10 NY3d at 59 [emphasis added]; *see e.g. Stewart v Jackson & Nash*, 976 F2d 86 [2d Cir 1992]; *see also Arbeeny v Kennedy Exec. Search, Inc.*, 71 AD3d 177, 184 [1st Dept 2010] [reviving at-will employee's claim of breach of contract for earned commissions]). The at-will employee must allege not that his employer wrongly fired him, but that "[he] would not have taken the job in the first place if the true facts had been revealed to [him]" (*Navaretta v Group Health*, 191 AD2d 953, 954 [3d Dept 1993]).

■ Plaintiff does not allege that defendants wrongfully terminated him. He claims that they misrepresented the nature of the job that they were hiring him to do, that they were only hiring him to gain access to his contacts and that if they had told him this he would not have left his job at J.P. Morgan to work for them. Indeed, plaintiff's injury preceded his termination.

Nor are plaintiff's damages speculative, since he alleged that they stem not from his loss of employment with defendants, but from his loss of employment with J.P. Morgan. These damages represent "the sum necessary for restoration to the position occupied before the commission of the fraud" (*Orbit Holding Corp. v Anthony Hotel Corp.*, 121 AD2d 311, 315 [1st Dept 1986] [internal quotation marks omitted]).

■ Furthermore, contrary to defendants' argument, the alleged representations were not expressions of future expectations, which do not sustain a fraudulent inducement cause of action (*see International Fin. Corp. v Carrera Holdings Inc.*, 82 AD3d 641, 641-642 [1st Dept 2011]). Rather, defendants' representations of present intentions constitute statements of material existing fact, which are sufficient to support a fraud claim (*see Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958]). As this Court held in *GoSmile, Inc. v Levine* (81 AD3d 77, 81 [1st Dept 2010], *lv dismissed* 17 NY3d 782

[2011]), "a misrepresentation of present fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty." Here, as noted above, the alleged misrepresentations centered around the precise nature of plaintiff's employment with defendants. Because plaintiff pleaded that Perez made his promise "with a preconceived and undisclosed intention of not performing it," and because the promises largely focused on defendant companies' financial health, the motion court erred in concluding that defendants' representations were nonactionable future statements (*Deerfield Communications Corp. v Cheesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986]).

■ Defendants' argument that the merger clause of the contract precludes this action because it renders any reliance by plaintiff unreasonable is also of no avail. Where a merger clause is "general and vague," i.e., merely "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made," the merger does not preclude parole evidence establishing fraudulent inducement to enter into the contract (*see Danann Realty Corp. v Harris*, 5 NY2d 317, 320 [1959]). The merger clause in this case states, "This Agreement constitutes the entire agreement between the parties with respect to subject matter and supersedes all previous understandings, representations, commitments or agreements, oral or written." This boilerplate language is too general to bar plaintiff's claim since it "makes no reference to the particular misrepresentations allegedly made here by [defendants]" (*LibertyPointe Bank v 75 E. 125th St., LLC*, 95 AD3d 706, 706 [1st Dept 2012] [internal quotation marks omitted]).

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered September 30, 2014, which granted defendants' motion to dismiss the complaint alleging fraudulent inducement, should be reversed, on the law, without costs, and the motion denied.

MAZZARELLI, J.P., SWEENY, CLARK and KAPNICK, JJ., concur.

Order Supreme Court, New York County, entered September 30, 2014, reversed, on the law, without costs, and the motion to dismiss the complaint denied.